Thank you, Your Honor. May it please the Court, my name is Brian Murphy again, and I represent Douglas Vance Crooked Arm. I will be presenting the oral argument on behalf of each defendant's appellant this morning. I'd like to reserve two minutes of my time. Let me say this. We had set this for ten minutes per side, but I think the panel recognizes this case is complex in some of the issues. So if you or your colleague on the government side needs some more time, we will give it to you. I appreciate that. Thank you. The appellants in this case were sentenced as felons for conduct that amounted to misdemeanor behavior, according to the plain language of the statute. I want to make clear at the outset what it is that the appellants are challenging. They're not challenging the sufficiency of the indictment, as the government has suggested. Rather, they're challenging the adverse legal ruling by the district court that for purposes of the Migratory Bird Treaty Act, when Congress used the term migratory bird in Section 707B, which is a felony section, that it understood that a feather is a bird. Now, as you mentioned earlier, Judge Gould, it's an issue of statutory construction. If the court accepts our, the appellant's, reading of the statute, it should reverse remand for sentencing pursuant to 707A, which is the misdemeanor provision. That would cover four of the counts related to interpretation of 707A and B, but the government's argued that the conspiracy count would save the indictment as a felony on that one count. And what's your response to that? Yes, the appellants had an agreement with the government that they would be able to challenge the issue of whether a feather is a bird. Everyone understood what the agreement was. They then pled guilty to selling a feather fan. That's all that they pled guilty to. And further, it would be a violation of their due process rights under Apprendi to increase the maximum penalty for the crime based on the fact that the government has not proven beyond a reasonable doubt. It should be, the defendants only pled guilty to selling a family heirloom feather fan. So they did not plead guilty to a conspiracy charge? Yes, they, Your Honor, they pled guilty to conspiring to violate the Migratory Bird Treaty Act, which by selling a bird part, but the only conduct that they have admitted to is selling a family heirloom feather fan. And a defendant should not be in a position of learning for the first time from the courts that selling an item containing a few feathers is a felony. If the court is to read the statute as a whole, which it's required to do, it's clear that Congress drew a distinction between birds and bird parts. In 703, Section 704, and Section 705, bird and bird part are each used in each of those sections. Because in Section 707B, which is a felony section, when Congress is identifying conduct that is punishable as a felony, it does not identify any conduct involving bird parts. Because the distinction between bird and bird part is made in other sections of the same act, the court is to presume that its absence of migratory bird in 707B is intentional. Now, the suggestion that the felony section was added to address all commercial violations of the act is, again, undercut by the plain language of the statute. A close reading of the statute shows that it's not a felony to offer to purchase, to purchase, to import, to export, to ship. These other commercial violations of the act are not felonies. Mr. Murphy, could you, at some point in your argument, address to what extent, beyond the plain meaning argument, the principle of the rule of lenity has any bearing on this case, and also respond to the arguments relating to Chevron deference? Yes. Turning first to your question about the rule of lenity, the appellants are of the position that there's no ambiguity in the statute. There's no party's made argument that there's an ambiguity or that the statute's vague before the district court or in the appellate briefs, and I don't think the government should be able to raise the issue today for the first time. The rule of lenity, if there is a, it's so ambiguous, the rule of lenity does require that the court rule in favor of an interpretation that is in favor of the defendants. I'm not, I don't believe personally that the rule of lenity applies here. What weight should we give to the government's interpretation of this statute? The agency, excuse me, the agency's interpretation of the statute. The, certainly an agency does not have authority to expand the scope of conduct that is punishable as a felony. Under Chevron, before a court can even consult a regulation for purposes of statutory construction, first must ask or decide whether Congress has directly addressed the issue. If Congress has done so unambiguously, that's the end of the matter. The courts and the agency must give effect to the language used by Congress. Here the issue is, well, what conduct is a felony? The Congress has addressed the issue. It said that taking with intent to sell or selling a migratory bird is a felony. Other violations are misdemeanors. Congress also drew a distinction between migratory birds and bird parts to other sections of the statute, and it even defined migratory bird in Section 715J of the same act. Defined migratory bird is those birds that are identified in the various migratory bird treaties. So there's nothing in the definitions that suggests that a feather should be a bird. The defendants admitted to selling feathers. They did not admit to selling birds. They should be sentenced according to the language that Congress used. I'll reserve the rest of my time for rebuttal. Thank you. That's fine. Okay. Yes, before we go, the government. Does Judge Newton have any questions at this time? No questions. Thank you. Okay. For the government, we have Mr. Johnson. Yes, Your Honor, and may it please the Court, Leif Johnson for the United States. I need to begin my presentation today clarifying something that I stated in the brief. At page 13 of the government's brief, I cited the Mackey case from this court in 1982, and I cited it for the proposition that the Migratory Bird Treaty Act prohibits the sale of eagles and parts of eagles, and I did not do justice to what the court actually stated in that opinion, and actually the court in Mackey said, as part of its opinion, that the felony provisions of the Migratory Bird Treaty Act prohibit the sale of eagles or parts of eagles, and if you, and I want to quote that language just so I'm clear on, and everyone's clear on that. It says, the Migratory Bird Treaty Act, 16 U.S.C. Section 703 and 707B, and the Bald and Golden Eagle Protection Act prohibit offering to sell or selling eagles or parts of eagles. Both Mackey and Friera offered to sell and sold whole eagles and eagle parts to undercover agents. Appellants violated both statutes. Was, were either of these defendants charged under 703 or 705? 703 and 707 are the felony provisions, so those two defendants were charged under the felony provisions for essentially the same type of conduct at issue here. I had thought they were charged under 707B2. Yes, that's the felony provision that relates to the sale of eagle parts, Your Honor. And does the indictment recite 703A or 705? In this case? Yes. No. The indictment here. So you, what you're referring to is two sections of the act where Congress said, not only Bird, but I quote, any migratory bird, any part, nest, or egg of any such bird or any product, whether or not manufactured which consists or is composed in whole or part of any such bird or any part, nest, or egg thereof. Yes. So Congress knew what to do. It knew what language to use. Yes. When it talked about something other than a bird, right? Yes, and our response to that, Your Honor, is exactly what the St. Pierre court held in its case, which is you read 703, 703, 704, and 705 are all the substantive provisions that prohibit conduct. 707 is merely the punitive portion that sets out the felony and the misdemeanor penalties that apply to the prohibited conduct in those other sections. But the indictment in this case you just told us doesn't charge these defendants with violating 703 or 705, right? It does charge the defendants with violating 703 and 707B. That's what the indictment charges here, and that was the same in the Mackey case. So those two provisions are read together, and when read together, they unambiguously state that the felony provisions apply to bird parts, and that is the essence of what the court said in Mackey, because the court is citing the felony provisions of the statute there. St. Pierre, which you've referred to, is a district court decision from the Eighth Circuit, a 1983 South Dakota district court. Yes. Why should we pay any attention to that? Simply because the reasoning is sound, and it relied on ñ it basically states that it was relying on this court's decision in Mackey. And in Mackey, the court did state that the felony provisions of the act apply to feathers. So I just want to point that out. Now, I understand that that wasn't the central holding of Mackey, Your Honor, but it was ñ Was that statement a dictum? No. Would you say it's a dictum? No. And I wanted to actually address that, Your Honor. I don't regard that as dictum because the question there was whether or not the defendant had a right to be charged under the lesser penalties of the Bald and Golden Eagle Protection Act, rather than the Migratory Bird Treaty Act, which is what we did here. And there, the court had to compare the two statutes. It had to basically place them side by side and say, here's what this one prohibits and here's what this one prohibits, and examine the question of whether or not the defendant had a right to be charged under the lesser penalties of one. And it concluded, in fact, that he did not. I also wanted to quickly address this issue of the agency's interpretation. It does involve a Chevron deference issue, Your Honor, but it also involves a second issue. And I think the briefs sort of address Chevron. But what I want the court to also consider is that the agency has had this interpretation of the statute since the early 1980s, as we point out in our brief. I suspect if Justice Scalia was here, he would ask you, why should we pay any attention to the prosecutor's definition of a criminal statute? For one very good reason, and that is that Congress has amended the statute two times since then. And it did not correct the agency's misinterpretation. And in the St. Pierre case, which is a district court case, the court cites and relies on a case out of the Supreme Court called Andrus v. Allard. And Andrus v. Allard dealt with the Migratory Bird Treaty Act and whether or not it prohibited the sale of feathers that were gathered prior to the act. And in doing that, it looked at, you know, the act itself and the legislative history and also the agency's interpretation. Couldn't we just as easily conclude that the failure of Congress to import the expanded definition under 703A and 705 into 707B2 is indicative of its intent that only a bird is involved in B2? We don't feel that that gives fair deference to this history. And Congress's history in amending the statute. And to quote Justice Brennan in the Allard case, he said, it is particularly relevant that Congress has twice reviewed and amended the statute without rejecting the department's view. That is exactly what happened in this case. The statute was amended in 1996, and the scienter provisions were added. It was amended again in 1998, and there Congress prohibited baiting of migratory game birds. But the point being, Your Honor, that in neither amendment did Congress correct this misinterpretation. And in fact, in the 1996 amendment, it affirmed that interpretation. What's your position on whether Count I saves the government in any event? Your Honor, this is something I blundered into in drafting the brief. I had no idea that the parties had had discussions about what arguments we would and would not make on appeal. I guess my solution or ‑‑ I didn't hear that as your opponent's argument. I heard him say when we pled, we pled with the understanding that we retained the argument that our conduct, admittedly criminal, sounded in misdemeanor only, not felony. Our position is to the adverse, Your Honor. Our position is that Count I did involve the baiting and killing of eagles and that we are prepared to prove that and we would be prepared to prove that. And if, you know, this case were to go back, the defense should withdraw their plea on that count. And actually, the plea agreement provides ‑‑ allows them to do that. And I think that that might be ‑‑ It's pretty much a boilerplate, isn't it? Actually, no, it's not. The plea agreement actually contained a provision that the parties bargained for that allows them to withdraw their plea if they prevail on appeal. So I have a question for you about the conspiracy claim. Yes. Is it under the general conspiracy statute 371? Yes. So now if I'm recalling that correctly, it would say if you conspire to do a felony, the conspiracy is a felony. If you conspire to do a misdemeanor, the conspiracy is a misdemeanor. So why would the conspiracy count here save the felony aspect of the indictment if the appellants prevail that we should interpret the statute the way they say? If the appellants prevail on their more restricted meaning of migratory bird, I think what it does is it reduces that conduct in count one that involved the mere sale of feathers and feather objects to misdemeanors, but that there would still be conduct alleged in there that could satisfy the felony. And I think under that circumstance, the district court would essentially offer or instruct on a lesser included offense. And so if the government failed to prove, in fact, that a killing and a taking occurred. Baiting and killing? Yes. Baiting and killing an eagle is definitely a felony under the statute. Yes. I'm sorry. No, go ahead. Let me ask you this because it transcends this case and relates to many other cases. Yes. What's the government's position on what is the proper rule of the rule of lenity in a case like this? Because just to simplify, and I'll probably oversimplify this, but let's say the appellants make a pretty good argument that the plain meaning of the statute is migratory bird means a whole bird and not parts based on their arguments, and the government makes a pretty good argument that it means something else. Does the rule of lenity give protection to these appellants? We don't think so, Your Honor, and I want to express exactly why. I think that the rule of lenity here might apply if you considered only 707B by itself. But our position and the position that all the courts that have looked at this read those provisions together, and we believe that's the only way that you could read this statute. And when you do that, it evinces a very clear purpose to felonyize the commercialization of migratory birds. And that dichotomy, the difference between mere taking for sport or for whatever reason, and commercialization is a bright line, and Congress clearly created a bright line because it would be easier to enforce. The line that would be created by a restricted definition of migratory bird is anything but a clear and bright line. It is, in fact, a very fuzzy line because then we get into, as we expressed in our brief, what exactly is a migratory bird? But more importantly, what is a whole bird and what is a piece of a bird, and when does a whole bird cease to be a whole bird when you start to remove parts? But aside from that anomaly, there's another anomaly here in the statute that I want the Court to be aware of, and that is if you read migratory bird only to be a whole bird under 707B2, and I've set forth the language of the statute in page 11 of my brief, if you read the statute that way, it would also apply to 707B1, which prohibits the taking of a migratory bird with intent to sell, and I'm quoting here, any such bird. So if we restrict migratory bird in that way, that would mean that a person could shoot an eagle with intent to sell that eagle and be guilty of a felony, but he could shoot that same eagle with intent to merely sell its tail feathers and be guilty of only a misdemeanor, and that simply cannot be, Your Honor. And for all of those reasons, we think this case, the Mackey case, essentially settled the issue here. It's at least worthy of some authority in the Court's decision on this issue. Okay, thank you. The Court has no further questions. We'll see if the panel has other questions, but let me say at this time, did Judge Hawkins or Judge Noonan have questions for the government? No, I don't have any questions, Judge. Okay, then we have some rebuttal arguments, and we let the government go a bit over time because it's a challenging case, and we invited that at the start. So if you need an extra minute, we'd add that. Thank you, Your Honor. What's your response to the government's argument on Count 1, which does, as counsel argued, specifically refer to 703A and 707B, both of which include the expanded definition of bird parts, et cetera? Can you explain that again? I'm sorry, I think I didn't follow. Well, I'm looking at Count 1 of the indictment, and in the violation section, it says, in violation of 16 U.S.C. 703A and 707B. So in Count 1, the government referred to statutes which use the expanded definition of bird parts, nest, et cetera. Yeah, what Section 703A says, it sets out all the violations of the Migratory Bird Treaty Act. So you can violate the act in many different ways, by offering to purchase, by shipping, by killing, by doing all sorts of things. The punishments then are set out in 707. So all violations are in 703, and the punishments are in 707. 707B sets out the felony conduct, which says it's a felony to take with intent to sell or to sell a migratory bird. And then all other violations are punished as a misdemeanor, as they were from 1919 to 1960. So there's 707. But under the overt acts, the government alleges conduct which would appear to be pretty clearly felony conduct, doesn't it? Yes, they've made an allegation of felony conduct. They may have made an allegation of felony conduct. I guess we're not conceding that on appeal yet, because it's not particularly relevant, because here the defendants have only pled guilty to conduct, according to the plain language of statute, as a misdemeanor. And they cannot be punished as felons for conduct that has not been proven without the violation of their due process rights. So let me give you a hypothetical. Let's say that we hope this doesn't become the case, that swordfish, sailfish, lots of other fish get so polluted with mercury and things like that that it's a health risk. And the government passes a statute saying it's against the law to sell fish to kids under a certain age. And someone does that. Would it be a defense to say, well, they just sold the edible parts? The fillet. They didn't sell the head. They didn't sell the tail. The fish has to mean the whole fish. When I go to the grocery store and I buy a fillet, I don't think anyone would dispute that I'm buying fish. But I don't think if I were to hold up a feather and say, what am I holding here, no one would say that's a bird. People would say that was a feather. So I think there is a distinction there. I think in a close case, if you have a bird that's quartered, maybe a jury. I don't actually think that's particularly – I think a bird that is cut up in the forest is still probably a bird. But that might be a case for a jury to decide. But this isn't a close case because the defendant's only admitted to selling feathers. Okay, let me give you another hypothetical. Because to me this is a hard case looking at it on both sides, and that is this. To your position, it's not a felony unless you sell the whole bird based on B. Let's say somebody started a business to sell bald eagle heads. We'll sell you these bald eagle heads. And that was their business. And they hire hunters to give them the dead eagles, and they sell the heads. So as I understand your position, it would be that the hunters could be guilty of a felony, but the guys who commercialized it and created the demand and sell it would only be guilty of a misdemeanor. I guess our position is that the text that Congress used should be the text that is employed. In my hypothetical then, would that be true? I think – That the guys who sold the bald eagle heads but didn't hunt the eagles would only be guilty of misdemeanor. That may be a case, and I think that would be – that might be one of those cases for a jury to decide whether selling just the head, a person who orders a head of an eagle and sells it, is actually selling a bird. In this case, that's not what the case is. But there may be a situation where a middleman sentences a felon or a misdemeanor based off of how involved they were in the conduct. Or it may be – I'm actually – it's possible. I'm not sure what the exact definition of take is, but if you're ordering – if you're hiring a hunter to go kill birds, there may be an argument that they're agents. If they were your agent, that's pretty simple. Right. But if they weren't your agent, just you had the business and they brought them in there, that's what's kind of bothering me about your side of the case. Although I think the rule of lenity may come to the rescue of the defense. But anyway. In Judge Gould's example of the eagle head, could the store selling eagle heads be charged with conspiracy? When they hire the hunters, they tell hunters, go out and kill as many bald eagles as you can or condors or some other protected bird and bring us the parts because we have a ready and available market for the heads of these birds. Could the government charge the store owner with conspiracy? Yes, I think so, Your Honor. If they pled guilty to conspiracy, would that be to a felony? Let me make sure that I understand what the question is, but I think what you're asking is if a store owner hired a hunter to go kill birds, could that person be charged and sentenced as a felon for conspiracy to take birds? If they pled guilty to a conspiracy count, which included the normal overt acts, would they be punished as felons or misdemeanors? It depends on what – hypothetical is different than what we have here, but I think depending on the overt act – That's why we call them hypothetical. I think depending on what the overt acts that they admitted to, yes, I think that would have an impact on whether it was a misdemeanor. But I think in this case, the conspiracy is actually alleged as whether they're actually conspiring to kill or take a bird  But yes, I think if a store owner conspired and took acts in furtherance of in order to kill a bird, I think that could be alleged and charged and sentenced as a felony. Okay. Thank you very much. We have to bring this fascinating argument to a close. It's a very difficult case. We appreciate the excellent arguments both from appellant and from appellee from the government. So with that, the case of United States v. Crooked Arms shall be submitted.
judges: NOONAN, HAWKINS, GOULD